**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2299**

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,

Plaintiff - Appellant,

v.

CLANCY & THEYS CONSTRUCTION COMPANY,

Defendant - Appellee.

**No. 15-2373**

WESTCHESTER SURPLUS LINES INSURANCE COMPANY,

Plaintiff - Appellee,

v.

CLANCY & THEYS CONSTRUCTION COMPANY,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (5:12-cv-00636-BR)

Argued:  January 24, 2017                                   Decided:  April 4, 2017

Before NIEMEYER, TRAXLER, and DIAZ, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Traxler and Judge Diaz joined.

---

**ARGUED**: Danny Lane Worker, LEWIS BRISBOIS BISGAARD & SMITH, Chicago, Illinois, for Appellant/Cross-Appellee. Allen Holt Gwyn, Jr., CONNER GWYN SCHENCK PLLC, Greensboro, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF**: Jessica C. Tyndall, MCANGUS GOUDELOCK & COURIE, Raleigh, North Carolina, for Appellant/Cross-Appellee. Timothy R. Wyatt, CONNER GWYN SCHENCK PLLC, Greensboro, North Carolina; Kirk D. Johnston, SMITH, CURRIE & HANCOCK LLP, Atlanta, Georgia, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

This case involves a dispute over insurance coverage for a general contractor's liability for defective design of a building's foundation, which resulted in the contractor becoming responsible to pay $1.77 million as part of the costs to repair.

Capstone Development Corporation hired a joint venture consisting of Brasfield & Gorrie, LLC, and Clancy & Theys Construction Company to construct a mid-rise student housing building in Raleigh, North Carolina. After construction was well under way, a portion of the building began to lean, damaging other portions of the building. After a plan for repair was agreed to, the Brasfield/Clancy Joint Venture initiated a mediation process with potentially responsible subcontractors to agree to an allocation of the $14.4 million repair costs. Following the process, the subcontractors and their insurance companies agreed to pay $10.5 million, leaving the remainder to be absorbed by the Brasfield/Clancy Joint Venture.

When Clancy, as a partner in the Brasfield/Clancy Joint Venture, sought reimbursement for its share of the repair cost from its insurance company, Westchester Surplus Lines Insurance Company, which had issued Clancy a general liability and professional liability insurance policy, Westchester Insurance commenced this action for a declaratory judgment that its policy provided no coverage. Clancy filed a counterclaim alleging breach and tortious breach of the insurance contract. The district court, finding that the policy afforded coverage, entered judgment in favor of Clancy on its breach of contract claim in the amount of $1.75 million and dismissed Clancy's claim for tortious

3

breach of contract. From the district court's judgment, dated June 18, 2015, Westchester Insurance appealed, and Clancy cross-appealed. We affirm.

I

The Brasfield/Clancy Joint Venture agreement divided the partners' interests on a 70/30 basis — 70 percent for Brasfield and 30 percent for Clancy. After being retained to construct the project, the Brasfield/Clancy Joint Venture hired GeoConstructors, Inc. as a subcontractor to build the foundation. GeoConstructors in turn hired others for various portions of the work to be performed.

To insure its liability as a partner or venturer in the joint venture, Clancy purchased a "Joint Venture Endorsement" to its Westchester Insurance policy to cover its liability as a partner in the Brasfield/Clancy Joint Venture. The underlying policy — a commercial general liability and professional liability policy — excluded coverage for joint venture liability, providing, "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." (Emphasis omitted). The Joint Venture Endorsement was designed to eliminate that exclusion and provide Clancy with coverage for joint venture liability, stating, "You are also an insured with regard to your participation in a joint venture that is not designated in the Declarations, but solely with respect to your liability arising from the performance of your work under the respective joint venture." (Emphasis omitted). The term "your work" was defined to mean "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in

4

connection with such work or operations" and to include "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work" and "[t]he providing of or failure to provide warnings or instructions." (Emphasis omitted).

In September 2011, during construction of the project, the east wing of the building began to lean, damaging other portions of the building under construction. In response to Capstone Development's demand that Brasfield/Clancy Joint Venture provide a "100% remedy that results in no risk being shifted" to Capstone Development or its lenders, the Brasfield/Clancy Joint Venture developed a design for repair, to which Capstone Development agreed, which involved underpinning the foundation with micro-piers. The repair ended up costing $14.4 million to implement.

Upon receiving Capstone Development's demand for repair, Clancy notified Westchester Insurance in September 2011 of the potential claim. But Clancy was unable subsequently to contact the employee of Westchester Insurance who had been assigned to the claim; unbeknownst to Clancy, that employee had left the employ of Westchester Insurance. After about a month, Clancy was able to establish contact with another Westchester Insurance employee, who had been assigned to the claim. After providing that employee with all of the communications between Clancy and Capstone Development, Clancy heard nothing further from Westchester Insurance for another two months. As Clancy pressed Westchester Insurance for a coverage determination, Westchester Insurance requested an accounting of costs and a copy of the Brasfield/Clancy Joint Venture agreement, all of which Clancy also provided. Eventually, several months later,

5

in May 2012, Westchester Insurance informed Clancy by letter that it believed that its policy did not cover Clancy's obligations resulting from the foundation's failure but that it was not issuing a formal denial of coverage. Indeed, three months after that, Westchester Insurance stated that it was still investigating the coverage issue. When, in September 2012, Clancy complained about the delay in Westchester Insurance's making a decision and threatened suit, Westchester Insurance commenced this declaratory judgment action.

In its complaint, Westchester Insurance sought a declaratory judgment that its policy did not cover Clancy's losses because Clancy's liability did not arise from the performance of its work. More particularly, it asserted that responsibility for the losses belonged to the Brasfield/Clancy Joint Venture, not to Clancy as a venturer in the Joint Venture. Clancy filed a counterclaim, asserting claims against Westchester Insurance for breach of contract and tortious breach of contract.

While the action was pending, all parties that were potentially liable, as well as their insurance carriers, with the exception of Westchester Insurance, met to mediate the loss. And in December 2012, they agreed to an allocation of the costs of repair. Clancy's share was $1.77 million, an amount that reflected the Brasfield/Clancy Joint Venture's liability of $3.9 million and Clancy's proportionate interest in the Joint Venture.

On Westchester Insurance's motion, the district court granted summary judgment to Westchester Insurance on Clancy's claim for tortious breach of contract because Clancy failed to show "malice, oppression, or a reckless indifference to consequence," as required to prove a claim for tortious breach of contract under North Carolina law. Following a bench trial on the remaining issues, the court found that Westchester Insurance owed

6

Clancy coverage for its $1.77 million loss, less a deductible of $500,000 as provided in the policy, plus interest, entering judgment in favor of Clancy in the total amount of $1,746,963.83.

II

In contending that its policy provided no coverage for Clancy's joint venture liability, Westchester Insurance argues that "Clancy and the Joint Venture were separate and independent entities under North Carolina law and for the purposes of the Policy. The Policy does not require Westchester to reimburse Clancy for amounts Clancy was contractually obligated to pay the Joint Venture under the Joint Venture Agreement."

In making this argument, Westchester Insurance confuses Clancy's obligations to its partner under the Brasfield/Clancy Joint Venture agreement and its obligations as a joint venturer to Capstone Development for the defective foundation. Westchester Insurance also overlooks the fact that its Joint Venture Endorsement provided coverage for Clancy's liability as a joint venturer to Capstone Development, which liability is indeed the same as the Joint Venture's liability. Not only did Clancy have liability as a joint venturer, it was this very liability that it insured when it purchased the Joint Venture Endorsement.

It is well established in North Carolina that, in joint ventures and partnerships, "all partners are jointly and severally liable for the acts and obligations of the partnership." N.C. Gen. Stat. Ann. § 59-45(a). Thus, the liability of a joint venture is indistinguishable from the liability of the venturers. *See, e.g.*, *Signature Distribution Servs., Inc. v. Wright*, 613 S.E.2d 752 (table), 2005 WL 1152893 at *4 (N.C. App. 2005) ("The injured person

7

may sue all the members of the partnership *or any one of them* at his election"). Thus, Westchester Insurance's premise that the Brasfield/Clancy Joint Venture's liability to Capstone Development was distinct from the liability of each member of the joint venture is fallacious. We thus conclude that the district court should be affirmed on this claim.

We also conclude, on Clancy's cross-appeal, that the district court did not err in granting Westchester Insurance summary judgment on Clancy's claim for tortious breach of contract. Under North Carolina law, to prove such a claim, a plaintiff must show "malice, oppression, wilfulness [or] reckless indifference to consequences." *Dailey v. Integon Gen. Ins. Corp.*, 331 S.E.2d 148, 155 (N.C. App. 1985). The district court concluded that, while the record showed delay, it did not provide support for the elements of a tortious breach claim. We conclude similarly that Clancy has not directed us to any portion of the record to support its claim. Clancy relies simply on Westchester Insurance's delay in investigating the coverage issue, which, without more, is insufficient to satisfy North Carolina's requirements for showing a tortious breach.

Accordingly, we affirm the judgment of the district court.

AFFIRMED